IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re<br><br>JOHN MICHAEL JOHNSON and<br>YOLANDA YVONNE JOHNSON,<br><br>    Debtors. | Chapter 7<br><br>Case No. 2:07-bk-06248-SSC |
| HENRY GATES,<br>    Plaintiff,<br><br>vs.<br><br>JOHN MICHAEL JOHNSON and<br>YOLANDA YVONNE JOHNSON,<br><br>    Defendants. | Adversary No. 2:08-ap-00189-SSC<br><br><br><br>MEMORANDUM DECISION |

## I. INTRODUCTION

This matter comes before the Court on an adversary "Complaint to Determine Non-Dischargeability of Debt" filed with the Court on March 13, 2008 by Henry Gates (the "Plaintiff"). An Answer was filed by John and Yolanda Johnson (the "Defendants") on April 14, 2008, the parties proceeded with discovery and other pre-trial procedures, and the matter was set for trial.

At the conclusion of the trial on September 15, 2008, the parties notified that Court that they wished to file post-trial memoranda of law. The Court directed the parties to file

any further memoranda in support of their respective positions on or before September 29, 2008.[1] Upon receipt of the memoranda, the Court deemed the matter under advisement. This Decision shall constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, Bankruptcy Rule 7052. The Court has jurisdiction over this matter, and this is a core proceeding. 28 U.S.C. §§ 1334 and 157 (West 2008).

## II. FACTUAL BACKGROUND

In July of 2005, three friends, John Johnson ("Mr. Johnson"), Henry Gates, the Plaintiff, and Wardice Holder ("Mr. Holder"), entered into discussions concerning the opening of a new restaurant in the west valley of the Phoenix metropolitan area. Apparently Mr. Johnson had a skill for cooking barbeque and had been considering opening a barbeque restaurant that would feature those skills. The Plaintiff was a member of the police force for twenty-five years and is now working for the Maricopa County Public Defenders' Office as a criminal investigator, and Mr. Holder is a newspaper reporter and self-employed professional photographer. None of the individuals had any experience in investing in, or managing, a restaurant. However, the Plaintiff and Mr. Holder had previously sampled Mr. Johnson's barbeque, and they had considered investing money in a restaurant venture.

Although Mr. Johnson initially testified that he had not agreed to invest any capital in the restaurant–just his cooking expertise, both the Plaintiff and Mr. Holder were adamant in their testimony that each party agreed to invest $20,000 in the new restaurant. Moreover, in subsequent testimony, Mr. Johnson seemed to contradict what he had previously testified to concerning his initial investment of capital. In any event, because of subsequent events, the initial agreement between the individuals is not critical to the Court's resolution of

---

**1.** The Debtors filed their Post-Trial Memorandum on September 26, 2008. The Plaintiff filed a "Motion for an Additional 48 Hours to Submit Plaintiff's Statement of Law" ("Motion") and subsequently filed his Plaintiff's Statement of Law on October 1, 2008. The Debtors filed a Response to the Motion on October 6, 2008.

2

the issues.

Soon after the initial meeting, the three individuals met a second time to discuss additional details about the new restaurant. Mr. Holder testified that he told the Plaintiff and Mr. Johnson, at this second meeting, that he was no longer able to invest in the business. Mr. Holder did not indicate his reasoning to the other individuals at the time, but at the trial before this Court, he testified that he did not have the funds necessary to invest in the business. Nonetheless, Mr. Johnson and the Plaintiff both agreed to continue forward with the restaurant as equal partners, with each sharing in the profits and expenses of the business. At this meeting, Mr. Johnson understood and agreed that each remaining partner in the business would invest $20,000 in the venture. It should also be emphasized what the parties did not require. There was no financial information or disclosure exchanged between the parties.

Mr. Johnson and the Plaintiff performed on their agreement by taking steps to open the restaurant. On August 31, 2005, Mr. Johnson and the Plaintiff traveled to Tucson to purchase $13,000 worth of restaurant equipment. According to both parties' testimony, the Plaintiff forgot his money, so Mr. Johnson paid for all of the equipment, and the Plaintiff reimbursed Mr. Johnson for his half of the purchase price at a later time. Mr. Johnson and the Plaintiff also entered into a lease agreement for commercial property located at 12725 West Indian School Road, Avondale, Arizona. According to the Plaintiff, Mr. Johnson did not have money to pay for a deposit under the lease at this time, so the Plaintiff paid the entire amount due at the lease signing. Mr. Johnson agreed to reimburse the Plaintiff for his portion of the amount due on the lease, but the Plaintiff testified that he was never repaid by Mr. Johnson. At some point, the Plaintiff also purchased a smoker for the restaurant, for which he was never reimbursed by Mr. Johnson.

In October of 2005, Mr. Johnson and the Plaintiff created The Pitt, LLC ("The Pitt") for the purpose of operating a barbeque restaurant in Avondale, Arizona. The necessary

3

articles of organization were filed with the Arizona Corporation Commission.[2] Both parties were listed as members of The Pitt.

Mr. Johnson hired Denco Dental Construction ("Denco") to perform renovations on the leased property. According to Mr. Johnson, the renovations cost him approximately $92,000. Mr. Johnson testified that he paid a portion of this $92,000 debt by working as a painting subcontractor for Denco. Although the Plaintiff was not necessarily aware of the hiring of Denco for the tenant improvements, or the cost of same, he was generally aware that tenant improvements were being made at the Avondale property in preparation for the opening of The Pitt and that Mr. Johnson had undertaken the task of preparing the restaurant for its opening.

In April of 2006, the parties applied for a loan at Wells Fargo, which loan application was rejected. The Plaintiff inquired into the reason the application was rejected, and a manager at Wells Fargo indicated that the loan was rejected due to Mr. Johnson's poor credit rating. However, the bank manager stated that the loan would likely be approved if the Plaintiff were to obtain a 51% interest in The Pitt and reapply for the loan. Based upon this information, the Plaintiff acquired the majority interest in The Pitt, after which he applied for a business loan on his own. This loan was subsequently approved by Wells Fargo. However, the Plaintiff did not terminate his membership in The Pitt limited liability company (1) upon learning of Mr. Johnson's poor credit rating, (2) after obtaining the 51% interest in The Pitt, or (3) after obtaining the loan from Wells Fargo. All of these factors militate against the Plaintiff caring about, or relying on, the Debtors' financial situation.

Although the Plaintiff testified that he never would have invested in The Pitt if he had known that Mr. Johnson owed the Internal Revenue Service the sum of $200,000 for estimated taxes, the evidence is not consistent with this statement. First, the Plaintiff did not make any financial disclosures to Mr. Johnson, and there is no indication that he required or

---

**2.** The parties referred to an LLC, and an independent review of the Arizona Corporation Commission's website reflects that The Pitt was a validly registered Arizona limited liability company.

4

cared about Mr. Johnson's financial situation. Second, there is no evidence to reflect that even upon learning of Mr. Johnson's poor credit rating, the Plaintiff took any adverse action against Mr. Johnson as a result of said disclosure. Instead, the Plaintiff acquired a 51% interest in The Pitt, and obtained a loan, on his own credit, from Wells Fargo. Third, it appears from the evidence presented by both parties that they underestimated the costs that it would require to open and operate a start-up restaurant business. The initial cash infusion of $20,000 by two individuals, and the sharing of any expenses for the start-up business, reflect that the Plaintiff did not expect this to be an expensive venture; hence, the Plaintiff's decision not to require any financial information. The facts that both the Plaintiff and the Debtor spent a substantial amount of money on restaurant equipment, a barbeque smoker, and tenant improvements reflect that neither party clearly understood the cost requirements of their barbeque restaurant. This is poor financial planning on the part of both parties, but not necessarily fraudulent conduct.

The Plaintiff also testified that he relied on the facts that Mr. Johnson was his neighbor, both living in the same gated community, and that Mr. Johnson drove a "$60,000 Mercedes Benz," as some type of affirmative representation of wealth by the Debtors. Again, there is no evidence to indicate how the Debtors acquired their interest in their home or car or how much they paid for their interests. The Plaintiff and Mr. Johnson testified that they entered into the restaurant venture on the bases that (1) they were friends, and (2) they believed that they had a good business concept.

A conflict later developed between the parties concerning the restaurant business, and on May 31, 2006, the Plaintiff filed a lawsuit in the Maricopa County Superior Court No.CV2006-070373 against Mr. Johnson and other individuals ("First Lawsuit"). The First Lawsuit was later dismissed as a result of a Settlement Agreement and Mutual Release entered into between the parties on September 27, 2006. Pursuant to the Settlement Agreement, Mr. Johnson and his wife were to pay the Plaintiff the sum of $38,578.82, with at least $18,443.07 of this amount due on or before October 4, 2006. Mr. Johnson and his wife also agreed to assist the

5

Plaintiff in removing the Plaintiff as a guarantor of the restaurant lease, pay the remaining portion of any amount due to the Plaintiff within 30 days of any initial payment, "clear" any outstanding lines of credit related to The Pitt, "clear" all business lines of credit related to The Pitt, and dissolve limited liability company that was operating The Pitt. In exchange, Mr. Johnson and his wife would have "claim, right and title" to any restaurant equipment purchased for The Pitt.

In performing under the Settlement Agreement, Mr. Johnson paid the Plaintiff the sum of $15,000, on September 28, 2006, by way of a cashier's check. Mr. Johnson also paid off the business line of credit of The Pitt, as evidenced by a credit card, in the amount of $3,423.23. Thus, Mr. Johnson made the initial payment as required under the Settlement Agreement.

Mr. Johnson and his wife opened up, and began operating, a new barbeque restaurant, called "Saints Barbeque," in the Avondale location where The Pitt was previously located. While operating this new business, Mr. Johnson presented to the Plaintiff a second cashier's check in the amount of $11,000 in December of 2006. This was a partial payment of what was required under the Settlement Agreement.[3] However, the Plaintiff refused and returned Mr. Johnson's offer of partial payment.

On January 30, 2007, the Plaintiff filed a second lawsuit ("Second Lawsuit") against Mr. Johnson and his wife, alleging that they failed to perform their obligations under the Settlement Agreement, and requested relief against Mr. Johnson, his wife, and Saints Barbeque, Inc., claiming (a) fraud; (b) consumer fraud; (c) breach of contract and breach of implied covenant of good faith and fair dealing; (d) injunctive relief; (e) replevin; (f) conversion; (g) civil conspiracy; and (h) constructive trust. Mr. Johnson filed a *pro se* Answer to the Second Lawsuit. The Plaintiff filed a Motion for Summary Judgment in response to the Answer. Mr. Johnson, his

---

**3.** The Settlement Agreement provided for the cash payment of $38,578.32. As noted, Mr. Johnson paid the amount of $18,443.07. He was to pay the additional amount of $20,135.25, within 30 days, which he did not do. He substituted the partial payment to the Plaintiff, which was refused.

6

wife, and Saints Barbeque failed to respond to the Motion for Summary Judgment, and the Maricopa Superior Court granted the Motion, entering Judgment in favor of the Plaintiff on July 25, 2007.

At some point, Mr. Johnson and his wife defaulted on the restaurant lease, and were forced to close the Saints Barbeque business in May of 2007, at which time the landlord seized possession of the restaurant equipment. Mr. Johnson and his wife filed their Chapter 7 bankruptcy petition on November 21, 2007. As previously noted, the Plaintiff filed his current Complaint on March 13, 2008.

### III. DISCUSSION

The Plaintiff requests that his debt be excepted from discharge pursuant to 11 U.S.C. §§ 523(a)(2), (4), or (6). The Plaintiff argues that a discharge of his debt is not appropriate in this case because Mr. Johnson and his wife, the Debtors and the Defendants in this adversary proceeding, obtained the debt through fraud. According to the Plaintiff, the Debtors failed to disclose certain financial obligations which, if disclosed, would have altered the Plaintiff's decision to enter into the restaurant business, The Pitt, with Mr. Johnson.

The Debtors contend that they never sought to deceive or defraud the Plaintiff, as evidenced by their significant contributions of time, energy and money they made to the restaurant business, The Pitt. Furthermore, when the Plaintiff decided to terminate his membership in the limited liability company, The Pitt, the Debtors made every effort to repay him for the funds that he had invested in the business. Unfortunately, due to many roadblocks, the Debtors were unable to operate The Pitt as a going concern, their efforts to operate Saints Barbeque ended in a financial disaster, and the Debtors were forced to file this Chapter 7 bankruptcy case.

For the reasons set forth hereinafter, the Court concludes that based upon the totality of the circumstances, the Debtors' actions do not rise to the level of fraud contemplated

7

Case 2:08-ap-00189-SSC    Doc 27    Filed 10/21/08    Entered 10/21/08 12:36:44    Desc
Main Document    Page 7 of 15

in Section 523(a)(2), (4), or (6).  Therefore, the Court finds that the Plaintiff's claim is discharged in accordance with Chapter 7 of the Bankruptcy Code.

A. DISCHARGE UNDER § 523(a)(2)

Pursuant to 11 U.S.C. § 523(a)(2)(A), a monetary debt is nondischargeable "to the extent obtained by false pretenses, a false representation, or actual fraud."  In the Ninth Circuit, to prove nondischargeablity under §523(a)(2)(A), the Plaintiff needs to show "(1) that the debtor made the representations; (2) that at the time he knew they were false; (3) that he made them with the intention and purpose of deceiving the creditor; (4) that the creditor justifiably relied on such representations; and (5) that the creditor sustained alleged loss and damage as the proximate result of such representations." In re Sabban, 384 B.R. 1 (9th Cir. BAP 2008); In re Diamond, 285 F.3d 822 (9th Cir. 2002); In re Slyman, 234 F.3d 1081 (9th Cir. 2000); In re Ettell, 188 F.3d 1141, 1144 (9th Cir. 1999); In re Hashemi, 104 F.3d 1122, 1125 (9th Cir. 1996); In re Eashai, 87 F.3d 1082 (9th Cir. 1996).  The Plaintiff must establish the nondischargeability of a debt by a preponderance of the evidence.  Grogan v. Garner, 498 U.S. 279, 284, 111 S.Ct. 654, 657-58, 112 L.Ed.2d 755 (1991).

The Debtors' failure to disclose a material fact that they are under a duty to reveal may constitute a "false representation," within the meaning of a fraud-based dischargeability exception.  In re Dakota, 284 B.R. 711 (Bankr.N.D.Cal. 2002). The concealment or omission of material facts that a party has a duty to disclose may support the nondischargeability of a debt on the grounds of actual fraud.  In re Apte, 96 F.3d 1319, 1323-(9th Cir.1996); In re Ekrem, 192 B.R. 982, 992 (Bankr.C.D.Cal.1996). A concealed fact is material if "a reasonable man would attach importance to the alleged omissions in determining his course of action." In re Miller, 310 B.R. 185 (Bankr.C.D.Cal.2004) *citing* In re Evans, 181 B.R. 508, 515 (Bankr.S.D.Cal.1995). The court should also consider the debtor's conduct at the time of the representations and may consider subsequent conduct to the extent that it provides an insight into the debtor's state of

8

mind at the time of the representations. In re Zack, 99 B.R. 717 (Bankr. E.D. Va. 1989); In re Basham, 106 B.R. 453, 457 (Bankr.E.D.Va.1989).

For a debt to be excepted from discharge, the debtor must actually intend to defraud the creditor In re Tsurukawa, 258 B.R. 192 (9th Cir. BAP 2001). However, direct evidence of an intent to deceive is rarely shown. Hence, intent may be "inferred and established from the surrounding circumstances." In re Hultquist, 101 B.R. 180 (9th Cir. BAP 1989); In re Anastas, 94 F.3d 1280 (9th Cir. 1996); In re Dakota, 284 B.R. 711 (Bankr.N.D.Cal. 2002).

The Supreme Court has held that a creditor's reliance on a debtor's misrepresentation or omission need be only justifiable, not reasonable, to except a debt from discharge under § 523(a)(2)(A). Field v. Mans, 516 U.S. 59, 116 S.Ct. 437, 439, 133 L.Ed.2d 351 (1995). Prior to the Supreme Court's decision in Field v. Mans, the Ninth Circuit had already held that the creditors had to prove "justifiable reliance" in Section 523 (a)(2)(A) exception to discharge cases. In re Kirsh, 973 F.2d 1454, 1458-1460 (9th Cir.1992); In re Apte, 180 B.R. 223 (9th Cir. BAP 1995). In the decision of In re Apte, the Bankruptcy Appellate Panel explained the meaning of justifiable reliance:

> The general rule is that a person may justifiably rely on a representation even if the falsity of the representation could have been ascertained upon investigation. In other words, negligence in failing to discover an intentional misrepresentation is no defense. However, a person cannot rely on a representation if he knows that it is false or its falsity is obvious to him. In sum, although a person ordinarily has no duty to investigate the truth of a representation, a person cannot purport to rely on preposterous representations or close his eyes to avoid discovery of the truth.

Id. at 229 (internal citations and quotations omitted).

The concept of justifiable reliance is not a standard that is based on the average reasonable person. Rather, it is a more subjective standard that takes into account the knowledge and relationship of the parties themselves. In re Kirsh, 973 F.2d 1454, 1458-1460 (9th Cir.1992); In re Dakota, 284 B.R. 711 (Bankr.N.D.Cal. 2002). The Court must look at all of the circumstances surrounding a particular transaction.

9

In this matter, to establish that a debt should be excepted from discharge under Section 523(a)(2), the Plaintiff must first show that the Debtors made a false representation with the intent and purpose to deceive. However, as noted above, under Section 523(a)(2), the concealment or omission of material facts that a party has a duty to disclose may support the nondischargeability of a debt on the grounds of actual fraud. The Plaintiff herein argues that the Debtors (i) failed to inform the Plaintiff of $200,000 in delinquent taxes owed to the IRS; and (ii) created the appearance of wealth by living in a 4,000 square foot house in a gated community and driving a $60,000 Mercedes Benz.

The mere omission of information does not necessarily constitute a false representation. The Plaintiff must also show that the Debtors had a duty to disclose the omitted information, and that this information was material. In re Miller, 310 B.R. 185 (Bankr.C.D.Cal.2004) *citing* In re Evans, 181 B.R. 508, 515 (Bankr.S.D.Cal.1995). At trial, Mr. Johnson conceded that he did not disclose the $200,000 obligation to the Plaintiff. However, Mr. Johnson testified that he had a dispute with the IRS as to whether the Debtors were, in fact, delinquent in the payment of their taxes and the amount of any such delinquency. Given this uncertainly, it is arguable that the Debtors had no duty to disclose this information to the Plaintiff. In this case, no facts were presented that the parties required full financial disclosure to each other. Moreover, there is no evidence presented that the IRS intended to levy on the tax obligation, had filed a lien against the Debtors, or had taken some other action which would have impacted the Debtors' ability to perform under the agreement to enter into the restaurant business.

The Debtors were active in the business, from the date discussions began with the Plaintiff, until the closing of the business in May of 2007. According to the evidence presented, the Debtors never absconded with any equipment or money; they simply had trouble paying the bills, which does not amount to fraud. Additionally, once the Plaintiff said he no longer wanted to be in the business, the Debtors made an effort to repay the Plaintiff through the operation of

10

the Saints Barbeque business. In fact, the Debtors made one payment to the Plaintiff pursuant to the Settlement Agreement, and tendered a partial payment to the Plaintiff, which was refused. Consequently, the Debtors behaved in a manner that was contrary to their pecuniary interest. On this record, the Plaintiff has failed to show that the estimated taxes of $200,000 which might be due and owing by the Debtors to the IRS was a material omission that could be the proper predicate of a fraud claim.

Assuming *arguendo* that the Debtors had the requisite intent to deceive the Plaintiff, the Plaintiff must also show that he justifiably relied on any false representations or omissions. In the decision of In re Kirsh, 973 F.2d 1454, 1458-60 (9th Cir. 1992), the Ninth Circuit found that a creditor-attorney had not justifiably relied on the debtor's representations regarding the number of prior liens on the debtor's property that secured a loan from the creditor. The Panel noted that even though the individuals were close friends, the fact that the creditor was an experienced attorney who practiced business law meant that there was no excuse for relying on the debtor's word alone rather than obtaining a title report. In this case, while the parties were friends, the Court cannot classify the friendship as a "close" one. In addition, the Plaintiff was a former police officer for twenty-five years who had been working in the Maricopa County Public Defenders' Office as a criminal investigator for the past five years. Given this experience, even if the parties were friends, the Plaintiff had a greater obligation to perform at least minimal due diligence before investing money in this business than someone who lacked his experience. As a result, the Plaintiff should have performed, at least, a minimal investigation to have justifiably relied on the Debtors' representations. The Plaintiff requested no financial information from the Debtors, relying on appearances alone that the Debtors had the financial wherewithal to enter into a business venture. Both parties underestimated the costs associated with such a venture based upon their inexperience. Upon learning of Mr. Johnson's poor credit rating, the Plaintiff still proceeded with the venture, acquiring a 51% interest in the limited liability company, The Pitt, and obtaining a loan from Wells Fargo. Given these facts, the

11

Plaintiff did not justifiably rely on the Debtors' failure to disclose an estimated tax liability, and the Plaintiff's claim for relief under 523(a)(2)(A) is denied.

B. DISCHARGE UNDER § 523(a)(4)

11 U.S.C. § 523(a)(4) allows a creditor to except a debt from discharge "for fraud or defalcation while acting in a fiduciary capacity. . . ." The question of whether a fiduciary relationship existed for purposes of § 523(a)(4) is one of federal law. Cal-Micro, Inc. v. Cantrell (In re Cantrell), 329 F.3d 1119, 1125 (9th Cir.2003); Ragsdale v. Haller, 780 F.2d 794, 795 (9th Cir. 1986). When determining the fiduciary relationship issue, the courts should consult state law. See id. The broad-based general definition of fiduciary is not applicable in the context of discharge under § 523(a)(4). In re Lewis, 97 F.3d 1182, 1185 (9th Cir. 1996). "[T]he fiduciary relationship must be one arising from an express or technical trust that was imposed before and without reference to the wrongdoing that caused the debt." See id. (citing Ragsdale). In Lewis, the Ninth Circuit held that partners under an Arizona partnership agreement stood in a fiduciary relationship with one another. See id. at 1186. Despite the fact that the Arizona statute did not impose such a burden, the Court's review of the case law indicated that the Arizona Courts had long held the individual partners within a partnership owed each other a duty of good faith and a duty to act for the benefit of the partnership. See id. This was enough to impose a fiduciary duty under § 523(a)(4).

If a fiduciary relationship is found, the next inquiry becomes whether the debtor's conduct rose to the level of a defalcation. The primary case on this issue is the Ninth Circuit decision in F.D.I.C. v. Jackson, 133 F.3d 694 (9th Cir. 1998), which holds that a debtor need not have the intent to commit a fraudulent act to be denied a discharge under § 523(a)(4). See id. at 703. "[D]efalcation, at least for the purposes of nondischargeability under Section 523(a)(4), includes any behavior by a fiduciary, including innocent, negligent and intentional defaults of fiduciary duty..." Thus, even if a fiduciary makes an innocent mistake with regard to carrying

12

out his fiduciary capacity, he may have a debt excepted from discharge under § 523(a)(4). See also: In re Short, 818 F.2d 693 (9th Cir. 1987) and In re Baird, 114 B.R. 198 (9th Cir. BAP 1990).

In this case, The Pitt was an Arizona limited liability company, subject to the Arizona Limited Liability Company Act. Unlike the Arizona Revised Uniform Partnership Act, which clearly enumerates the partner's duties to the partnership and other partners, the Arizona Limited Liability Company Act is silent as to the duties a member owes to the LLC and the other members. Since Arizona has no persuasive authority defining the duties LLC members owe to one another, the Court's only recourse would normally be to review the operating agreement between the members. Unfortunately, the Plaintiff failed to provide the Court with a copy of The Pitt's operating agreement. Therefore, it is impossible for the Court to determine what, if any, duties Mr. Johnson owed the Plaintiff. Since the Plaintiff carried the burden of proof to show that a fiduciary relationship existed between the parties prior to, and separate from, any defalcation, the Plaintiff has failed to carry his burden of proof on this issue. Accordingly, the Plaintiff's claim for relief under Section 523(a)(4) is denied.

C. DISCHARGE UNDER § 523(a)(6)

11 U.S.C. § 523(a)(6) prevents discharge from any debt "for willful and malicious injury by the debtor to another entity or the property of another entity." Banks v. Gill Distribution Centers, Inc., 263 F.3d 862 (9th Cir. 2001). The Supreme Court held this to require a "deliberate or intentional injury, not merely a deliberate or intentional act which causes injury." Kawaauhau v. Geiger, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). Moreover, under Lockerby v. Sierra, 535 F.3d 1038 (9th Cir. 2008), the Court must find that the debtor engaged in some form of "tortious conduct." If so, then the court proceeds to the next step in the analysis, which is whether the debtor's conduct was both willful and malicious.

A debtor's actual knowledge is the focus of the willfulness inquiry under § 523(a)(6). "[T]he subjective standard correctly focuses on the debtor's state of mind and

13

precludes application of § 523(a)(6)'s nondischargeability provision short of the debtor's actual knowledge that harm to the creditor was substantially certain." In re Thiara 285 B.R. 420 (9th Cir.BAP 2002) (citing Su v. Carrillo (In re Su), 259 B.R. 909, 914 (9th Cir. BAP 2001), *aff'd*, 290 F.3d 1140 (9th Cir.2002)). In addition, the injury must be "malicious." This means that it must also be a wrongful act, done intentionally, which necessarily causes injury, and which is done without just cause or excuse. Petralia v. Jercich (In re Jercich), 238 F.3d 1202, 1208 (9th Cir.2001), cert. denied.

In this case, the facts do not suggest that the Debtors engaged in any form of tortious conduct. According to the Plaintiff, the Debtors' failure to notify him of their debt to the IRS amounted to tortious conduct against the Plaintiff. The Plaintiff reasons that the Debtors owed him a duty to disclose their debt to the IRS so that the Plaintiff could make an informed decision based on the current financial condition of the Defendants. Further, the Plaintiff argues that implicit in the parties' agreement to split the costs of the business equally was a declaration that the Defendants had the financial capability of paying the bills. In reviewing the recent decision of Lockerby, the Ninth Circuit has carefully crafted a method to determine whether a debt is nondischargeable under Section 523(a)(6). A court must review the applicable statutes and case law and determine whether a tort has been committed. If that type of conduct cannot be found, as a threshold matter, the court must find that the debt is nondischargeable under said subsection.

In this case, the Plaintiff did not allege any type of a tort under Arizona law. Initially the Court believed that, at the trial, the Plaintiff might attempt to allege and prove some type of tortious interference with the business of The Pitt by the Debtors, although that type of allegation was not set forth in the pleadings. However, the evidence is clear that the Plaintiff withdrew from the business, in the early stages, with Mr. Johnson to proceed on his own. Mr. Johnson also denied that he engaged in any type of separate barbeque business when he and the Plaintiff were trying to open The Pitt. Finally, Mr. Johnson made a number of payments to the Plaintiff,

14

1 | one of which was refused by the Plaintiff, which clearly show subjectively that Mr. Johnson did
2 | not have the requisite intent to commit any type of tortious conduct. Based upon the evidence,
3 | this Court concludes that the Plaintiff has failed to show the requisite conduct that is required
4 | under Sections 523(a)(6).

## IV. CONCLUSION

Based upon the foregoing, the Plaintiff has not met his burden of proof. Consequently, the Plaintiff's Claim for Nondischargeability of his debt under Section 523(a)(2), (4), or (6) is DENIED. The Court shall execute an order incorporating this Decision.

DATED this 21[th] day of October, 2008.

_____
Honorable Sarah Sharer Curley
United States Bankruptcy Judge

15